William F. **BRECKENRIDGE**, Petitioner,

v.

**UNITED STATES of America,
Respondent.**

**Civil Action No. 93–460–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Sept. 24, 1997.

William Michael Merone, Kenyon & Kenyon, Washington, DC, for Petitioner.

William F. Breckenridge, Orange, VA, pro se.

Jean Barrett Hudson, U.S. Attorney's Office, Charlottesville, VA, for Respondent.

*MEMORANDUM OPINION*

## I. Factual and Procedural Background

The facts of this case have been reiterated numerous times in numerous courts so this court will lay out only those facts relevant to its determination at this point. Petitioner was convicted of a series of breaking and entering and grand larceny offenses. Five offenses occurred in the City of Charlottesville, and one in the County of Albemarle, although within one street of city limits. In 1987, Petitioner was tried and convicted by a jury in Charlottesville for the five offenses occurring there. Also in 1987, petitioner pled guilty to breaking and entering and grand larceny in Albemarle County for the one offense occurring there. On May 23, 1991, a jury convicted the defendant in federal court, in Crim. Action No. 90–209–C, of a violation of 21 U.S.C. § 841 (possession with intent to distribute crack cocaine). On September 26, 1991, the court sentenced defendant to two hundred twenty (220) months as a career offender under Sentencing Guideline § 4B1.1. United States Sentencing Commission Guidelines Manual (Nov.1995).

Mr. Breckenridge then filed a motion to vacate, set aside, or correct his sentence. This court denied said motion. Defendant appealed pursuant to 28 U.S.C. § 2255 (West 1988), asserting ineffective assistance of counsel. Mr. Breckenridge asserted that his trial counsel's failure to argue at sentencing that the five Charlottesville convictions and the Albemarle conviction were related constituted ineffective assistance of counsel. Had this court found the six convictions to be related, the defendant would not have been classified as a career offender, would have received a total offense level of 12, and would have fallen within the 30–37 month imprisonment range under the Sentencing Guidelines. *United States v. Breckenridge,* 93 F.3d 132, 135 (4th Cir.1996).

The Fourth Circuit applied the *Strickland v. Washington* two-prong, ineffective assistance test in which petitioner must show "(1) his counsel's performance fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2)

'there is a reasonable probability that but for the counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* at 136, *quoting Bell v. Evatt,* 72 F.3d 421, 427 (4th Cir.1995), *citing, Strickland,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

The circuit court determined that if the six sentences were related, then the defendant was prejudiced by his counsel's failure to argue relation [1] and his subsequent sentencing as a career criminal. The circuit court then found that "there can be no doubt that [the five Charlottesville sentences] were related." *Id.* at 137. However, the circuit court stated that unless the Albemarle sentence was also related, there was no prejudice (because if the Albemarle sentence was related, then Mr. Breckenridge would not have been classified as a career offender under § 4B1.1 [2].) *Id.* at 138.

The circuit court then set out the factors to consider in determining whether offenses are related, in that the offenses are part of a common scheme or plan. The circuit court applied the factors suggested by prior case law and concluded that several factors were met. The circuit court found that the substantive offenses underlying the sentences were "identical." *Id.* at 138. Moreover, the circuit court accepted Breckenridge's assertion "that the prior offenses were committed in close proximity, within a short period of time, [and] in the same manner." *Id.* However, the circuit court declined to draw conclusions from the analysis in the absence of evidence of the similarity of the modus operandi and the role of geography in the two convictions. *Id.* at 138–39. The circuit court, therefore, remanded the case to this court to determine these two narrow factual questions.

On February 24, 1997, Magistrate Judge B. Waugh Crigler held an evidentiary hearing. At that hearing, Judge Crigler stated that it was his belief that the job of the district court was only to answer the two specific questions asked by the circuit court. Judge Crigler found that the offenses "shared a lot of things in common," but continued on to note dissimilarities. Most importantly, Judge Crigler found that Mr. Breckenridge went to the Albemarle house on a specific mission to get guns, as requested by the informant, because the owners of that home were "well-reputed possessors of guns." In discussing the different trial locations of the Charlottesville and Albemarle cases, Judge Crigler stated unequivocally, "[T]here is absolutely no question in my mind that they would have been tried together." Therefore, Judge Crigler recommended that this court find that the modus operandi of the offenses was different, but that the offenses were indicted and sentenced separately only because of geography.

The circuit court was clear in its directions to this court. If the court finds *neither* a similar modus operandi *nor* a difference in prosecution location based solely on geographic accident, then it should let the sentence stand. However, if the court finds *either* a similar modus operandi *or* a consolidation prevented solely by geography, then it must vacate and resentence.

## II. Discussion

■ The Fourth Circuit has held that a district court is not bound by the mandate of the court of appeals "when faced with extraordinary circumstances." *United States v. Bell,* 5 F.3d 64, 67 (4th Cir.1993). In an opinion adopted by the Fourth Circuit, the First Circuit has explained what circumstances would allow a district court to reopen an issue:

> (1) a "show[ing] that controlling legal authority has changed dramatically; [ (2) ] that significant new evidence, not earlier obtainable in the exercise of due diligence[, has come to light]; or ... [ (3) ] that a blatant error in the prior decision will, if uncorrected, result in a serious injustice."

---

1. This court uses "relation" to mean the related nature of the offenses or sentences.

2. Section 4B1.1 states: "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The definition of "crime of violence" includes "burglary of a dwelling." § 4B1.2(1)(ii).

*United States v. Bell,* 988 F.2d 247, 251 (1st Cir.1993), *cited in, Bell,* 5 F.3d at 67. The focus of the test is justice in the face of changed circumstances. This court finds that justice in the case before it (justice for other defendants and for society in the form of uniformity of sentencing), requires careful adherence to the spirit of the Fourth Circuit's opinion.

Mr. Breckenridge represented to the Fourth Circuit that the Charlottesville offenses had been consolidated for trial by order of the court. Such an order would have required a finding by the court that the offenses were part of a "common scheme or plan" under the Rules of the Supreme Court of Virginia. Va. R.S.Ct. 3A:6(b), 3:10. Rule 3A:6(b) allows joinder of two or more offenses on an indictment if the offenses are based on the "same act or transaction" or are part of "a common scheme or plan." Rule 3A:10(c) allows the court to "direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials, and (I) the offenses meet the requirements of Rule 3A:6(b) *or (ii) the accused and the Commonwealth Attorney consent thereto."* (Michie 1997) (emphasis added). Contrary to the assumption made in the opinion above, the joinder of the Charlottesville offenses in state court resulted from the consent of the accused by counsel and the Commonwealth attorney. The state court, therefore, made no finding of a "common scheme or plan." Because the court above assumed that the state court entered a joinder order, it did not analyze the relation of the various cases. The joinder *by consent* of the five Charlottesville cases does not compel a finding of relatedness as to those offenses. Assuming, for argument's sake, that these five offenses are related, the critical and dispositive question then is whether the sixth, Albemarle County, offense is likewise related to the five Charlottesville offenses. If any two of the six breaking and entering sentences are found to be not related, then Mr. Breckenridge remains in the career offender classification and the higher sentencing range. Therefore, this court finds that the ends of justice require a new analysis of the related nature of the six of-

fenses, proceeding without the assumption of a finding of relation through a "common scheme or plan" in the state court.

Absent a consolidation order by a court, offenses must be factually similar to be considered "related" for purposes of § 4B1.1. *United States v. Allen,* 50 F.3d 294, 296 (4th Cir.1995)(Michael, J.), *citing, United States v. Metcalf,* 898 F.2d 43, 45 (5th Cir.1990); *United States v. Lopez,* 961 F.2d 384, 387 (2d Cir.1992). The factors by which a court should determine factual similarity include:

> whether the crimes were committed within a short period of time, in close geographic proximity, involved the same substantive offense, were directed at a common victim, were solved during the course of a single criminal investigation, shared a similar modus operandi, were animated by the same motive, and were tried and sentenced separately only because of an accident of geography.

93 F.3d at 138, *citing, United States v. Shewmaker,* 936 F.2d 1124, 1129 (10th Cir.1991); *United States v. Chartier,* 933 F.2d 111, 115 (2d Cir.1991); *United States v. Houser,* 929 F.2d 1369, 1374 (9th Cir.1990).

The case law has pointed to various factors and declared them insufficient to render prior convictions related. *See, e.g., United States v. Sanders,* 954 F.2d 227, 232 (4th Cir.1992)(holding similar motivation of supporting heroin addict insufficient to render two prior offenses related); *United States v. Fonville,* 5 F.3d 781, 784 (4th Cir.1993)(holding common motivation and participants insufficient to render two prior offenses related); *United States v. Rivers,* 929 F.2d 136, 140 (4th Cir.1991) (holding common plan to rob gas stations for money for drug habit insufficient to render prior offenses related); *United States v. Flores,* 875 F.2d 1110, 1114 (5th Cir.1989)(holding six burglaries of private residences not part of common scheme although all sentenced together), *cited with approval in, Rivers,* 929 F.2d at 140; *United States v. Bracey,* No. 95–5668, 96–4008, 95–5670, 104 F.3d 359, 1996 WL 741129, at *5 (4th Cir.) (unreported) (holding six robberies not related despite goal of eventually raising

money to go to California); *United States v. Burkes,* 937 F.2d 603, 1991 WL 118003, at * 1 (4th Cir.) (unreported) (holding unrelated two illegal drug purchases despite time span of six weeks between offenses and purchase from same dealer). Clearly, a mechanical finding of the existence of one or two of the above factors does not necessarily make offenses related.

An analysis of the relationship of numerous offenses should begin with the policies underlying the Sentencing Guidelines. *Allen,* 50 F.3d at 297. The Guidelines seek "uniformity and predictability in sentencing." *Id.* Further, the legislature mandated that the Sentencing Commission "provide a substantial term of imprisonment for repeat offenders." *Id., citing* 28 U.S.C. § 994(I). The policies of the Sentencing Guidelines should be preserved through a focus on substance rather than formality. It would be an anomalous result, indeed, if Mr. Breckenridge escaped sentencing as a career criminal because he was, in fact, a criminal whose career lay in multiple breaking and entering and grand larceny offenses.

■ Using the above analysis as a polestar, the court determines that the six offenses of the defendant are not related. The offenses all occurred within one month and within a relatively limited geographical area. However, in *United States v. Miller,* the Second Circuit court explains, "offenses that involve multiple, separate instances of fear and risk of harm, such as robbery of the same victim on different occasions, should not be grouped." 993 F.2d 16, 21 (2d Cir. 1993) (citations omitted). Further, in *United States v. Washington,* the Fifth Circuit, relying on logic similar to that of the Second Circuit, held that two robberies were not related, although the defendant robbed a convenience store, escaped, and returned a few hours later to rob the same store with the same clerk. 898 F.2d 439 (5th Cir.1990).

All of Mr. Breckenridge's convictions involved the same substantive offenses: breaking and entering and grand larceny. However, to find them related on this ground raises the anomaly noted above of encouraging offenders to excel in many replications of a particular kind of crime. Moreover, the

courts have noted that a similarity of crimes does not indicate that they are related. *United States v. Brown,* 962 F.2d 560, 564 (7th Cir.1992). As the Second Circuit explained in *United States v. Sexton,* "[C]rimes are not related just because they ... were part of a crime spree." 2 F.3d 218, 219 (7th Cir.1993). Rather, the offenses should be interlocking parts of a common scheme. *Id. See, e.g., United States v. Hallman,* 23 F.3d 821, 826 (3d Cir.1994) (holding offenses related when defendant stole mail in search of blank checks and other instruments in order to convert them through forgery); *United States v. Ali,* 951 F.2d 827, 828 (7th Cir.1992) (holding offenses not related when defendant robbed grocery store, found money order accidentally amongst other booty, and then converted it through forgery).

The offenses in the instant case did not involve a common victim (except to the extent that all victims were residents of homes into which Mr. Breckenridge broke and entered). The offenses were solved in the course of one criminal investigation. However, it was not one investigation of one crime. Rather, the investigation was into a string of crimes believed to be perpetrated by one offender. The implications of suggesting that, because one team of investigators was assigned to this series of crimes, the series would become one crime for purposes of sentencing, are discomfiting in that, again, the criminal who repeatedly engages in same offense behavior is rewarded.

The analysis of the similarity of modus operandi is similar. While all the offenses were committed in a similar manner, that manner was not unique in any way: he broke, he entered, he took things. Again, the court hesitates to encourage repetitious offenses.

Mr. Breckenridge's immediate motive appears to have varied: at certain times, Mr. Breckenridge broke and entered simply to find valuables for later resale; at other times, Mr. Breckenridge broke and entered seeking particular goods upon the orders of an agent. However, underlying motive remained the same: money. Again, however, this court questions the significance of this finding. Money is the Moloch for many defendants.

The final factor looks at whether the offenses were "tried and sentenced separately only because of an accident of geography." *Breckenridge,* 93 F.3d at 138. Considering the evidence from the hearing before Judge Crigler and the consensual nature of the joinder of the Charlottesville cases, the defense may have approved such joinder had the Albemarle County case also been before the Charlottesville state court. Considering, however, the separate jurisdictions engaged in consideration of defendant's crimes, it is unlikely that either jurisdiction would relinquish its authority over the matter. It is further unlikely that the state court would have *forced* the joinder of all six offenses in one case even had the offenses occurred in the same city/county. The offenses could have been indicted and tried separately without problem. Certainly, it would be possible to prove to a jury in a separate trial that one burglary was committed without evidence of the others. Further, and of strong importance, under Virginia law, the discretion of the judge forcibly to join offenses is limited by the requirements of justice such as avoiding possible prejudice which might arise from the cumulative presentation of evidence of multiple offenses. *Goodson v. Commonwealth,* 22 Va.App. 61, 467 S.E.2d 848 (1996); *Long v. Commonwealth,* 20 Va.App. 223, 456 S.E.2d 138 (1995). A consideration of this limitation, absent consent, would strongly deter the state court from forcing a joinder of the five offenses. *Goodson v. Commonwealth,* 22 Va.App. 61, 467 S.E.2d 848 (1996); *Kirk v. Commonwealth,* 21 Va.App. 291, 464 S.E.2d 162 (1995); *Long v. Commonwealth,* 20 Va.App. 223, 456 S.E.2d 138 (1995); *Fincher v. Commonwealth,* 212 Va. 552, 186 S.E.2d 75 (1972). This court finds that it is unlikely that the six cases would have been tried together but for an accident of geography.

The conclusion of the court that the offenses were not related requires a further conclusion that, under the test of *Strickland v. Washington,* defendant's attorney provided effective assistance of counsel to Mr. Breckenridge in defendant's district court trial and sentencing for possession of "crack" cocaine with intent to distribute. 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Because the offenses were not related, counsel's assistance did not fall below an objective standard of reasonableness and defendant received the proper sentence.

*III. Conclusion*

This court finds that the accumulation of the evidence, the analysis of the factors indicating relation, and an awareness of the policies of underlying the Sentencing Guidelines all counsel that the six offenses were not related for purposes of sentencing.

An appropriate order this day shall issue.

### ORDER

For the reasons stated in the accompanying memorandum opinion, it is hereby

### ADJUDGED AND ORDERED

1. that petitioner's March 28, 1997 objections to the March 11, 1997 Report and Recommendation of the Magistrate Judge shall be, and hereby are, DENIED;

2. that, upon re-analysis, the court concludes that it must depart from the Report and Recommendation of March 11, 1997; and

3. that defendant's motion to vacate, set aside, or his sentence shall be, and hereby is, DENIED, as ordered in Crim. Action No. 90–209–C.

The Clerk of the Court is hereby directed to send a certified copy of this order and the accompanying memorandum opinion to all counsel of record.